MARTIN H. JURGENS ET AL., APPELLEES, v. JOHN B. WIESE ET AL., APPELLANTS.

38 N. W. 2d 261

Filed June 29, 1949. No. 32624.

*Carstens & Pickett,* for appellants.

*Leslie H. Noble,* and *Hubka & Hubka,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This case was instituted by Martin Jurgens and Anna Jurgens, appellees, to prevent John B. Wiese and Tena R. Wiese, appellants, from destroying a hedge located entirely, as alleged, on and near the south boundary of the land of appellees, and to recover damages for a partial destruction thereof.

Appellants allege the parties were adjoining landowners and they and their grantors had for more than 10 years last past recognized the boundary between their lands to be the center of the hedge; that appellants had trimmed it on their side; that they did not claim the entire hedge, but only 50 percent thereof; that they were cutting it to protect their property in the hedge; and that they were the owners by adverse possession of any land south of the center of the hedge and north of the original boundary line of their land, as located by the original survey. These matters were pleaded defensively and as a counterclaim with an additional allegation of damages resulting from a cutting of a part of the hedge by appellees, and they ask a dismissal of the petition, a determination of the boundary line, and division thereof between the parties, and damages.

The district court found generally for appellees, that the evidence showed the row of hedge trees was north of the south boundary of their land and wholly thereon, and by decree awarded them damages and a permanent injunction prohibiting appellants from unlawful interference with the hedge. The motion of appellants for a new trial was denied, and they have appealed.

The northwest quarter of Section 18, Township 4 North, Range 8 East, of the 6th P. M., Gage County, Nebraska, was owned by John Williams. He planted the hedge in question many years ago, about 1870, and he claimed that the hedge was a part of his farm and belonged to him. He sold the land to John Lenners about the year 1900. Lenners always claimed the hedge was a part of his land. "Williams sold it that way." He cut posts from trees in the hedge and used them as fence posts; his son Henry Lenners, who later resided on the farm, cut part of the hedge and used posts therefrom in building a fence; and John Lenners in the fall of 1935 gave notice to John B. Wiese, one of the appellants, not to interfere with or destroy any part of the hedge, if he did Lenners would stop him. John B. Wiese cut none of the hedge from 1931 to 1947. About 1935 or 1936 John B. Wiese said he was running into trouble with Lenners and "I want to take that hedge from the old gentleman." John Lenners died, the land was sold in the partition of his estate, appellees bought the west 132.77 acres thereof in 1945, and are the owners of it.

The southwest quarter of Section 18, Township 4 North, Range 8 East, of the 6th P. M., Gage County, Nebraska, was owned by George Wiese, the father of John B. Wiese, one of the appellants. The evidence is uncontradicted that George Wiese never made any claim to the hedge but did complain that it was too close to the line. He stated more than 30 years before the trial of this case, "To my notion it ain't right. Lenners has got that big hedge so close * * * (it) is damaging my land. * * * By sapping and they had to go along it every so

often and cut branches." He did not claim the hedge was on his land or on the line, but said it was too close to the line. Appellants bought this land from the father of John Wiese in the spring of 1933, have owned it since, and resided thereon commencing in the spring of 1934. John B. Wiese, one of the appellants, did not during the period from 1931 to 1947 make any claim that the hedge was on their land or that it was on the boundary line. He did a couple of times during that period complain that the hedge was sapping his ground and causing him damage. After appellees bought their land John Wiese told Mr. Jurgens he could get "damage off you" because the hedge damaged his land, that Wiese did not own the hedge, he only claimed damage. He wanted to have some damage for the injury done his land. The hedge was so close to the line it sapped some of his ground. When Jurgens asked him how much he wanted, Wiese said, "Half of it." Wiese admits he had a conversation with Jurgens in 1947 about the hedge in which he said he felt that the hedge had done him a lot of damage, and that he thought he "was entitled to have half that hedge."

The hedge was all planted by the man (John Williams) who was the original owner of the land, along the west and south of the Jurgens' land. The hedge along the west of the land is 26.5 feet east of the west boundary, and the part thereof along the south is one foot north of the south boundary of the land, wholly upon the land of appellees. The trunks of the trees are north of the center section line dividing the northwest quarter and the southwest quarter of this section. This hedge was planted many years ago, and in some places is very thick, has good-sized trees, and has overhung on both sides from the trunk line six or seven feet. The farm operations on the Wiese land were conducted as close as possible to the hedge, but not within one foot thereof. There is, and had been for quite a number of years, a fence on the Wiese land because of the pasture thereon, about three

feet south of the hedge for a considerable distance from the east boundary of land of appellees. There was such a fence there as much as 35 or 36 years ago. Appellants were cutting the hedge at the time the suit was filed. There was evidence that the damage, because of the part of the hedge cut by them, was in excess of the amount awarded to appellees.

The contention of appellants that they acquired the area between the south boundary line of the land purchased by appellees and the hedge extending from east and west across the south part thereof, by adverse possession or by long acquiescence of a fence or hedge as a boundary line between the lands in question, is not established by the evidence. The proof is the opposite. The record is clear that the hedge was planted and the trunks of the trees thereof are about one foot north of the south line of this area, and wholly upon the land of appellees. The hedge is their property, and no part of it has ever been owned by appellants. There is no evidence that they ever used or claimed any area north of the south boundary line of the land of appellees. The complaint of appellants and their grantor was that the hedge was north of, but so close to the boundary line that it damaged the land now owned by appellants and they sought and demanded the payment of damages. The finding of the trial court generally for appellees and that the hedge was wholly upon their land is abundantly sustained by the evidence. The ownership of trees standing wholly on the land of one owner, although their roots or branches extend into or over the land of another, is vested in the person on whose land the trees stand, and the adjoining owner has no property in them. Weisel v. Hobbs, 138 Neb. 656, 294 N. W. 448; Wideman v. Faivre, 100 Kan. 102, 163 P. 619, Ann. Cas. 1918B 1168; Cobb v. Western Union Telegraph Co., 90 Vt. 342, 98 A. 758, Ann. Cas. 1918B 1156; 2 C. J. S., Adjoining Landowners, § 37, p. 33; 1 C. J., Adjoining Landowners, § 90, p. 1232; 1 Am. Jur., Adjoining Landowners, § 55, p. 536.

The fact that appellants and their grantor cut branches from trees in the hedge which extended over their property is no evidence that appellants had any interest in or ownership of any part of the hedge, neither was it a recognition of the hedge as a boundary between the lands of the parties. One whose property is invaded by the boughs of trees growing on adjoining premises may cut them at the point where they enter his property. The act of cutting the branches to the extent they have entered the adjoining property is the exercise of a right, but it is not evidence of the ownership of a tree or trees from which the branches grew. Michalson v. Nutting, 275 Mass. 232, 175 N. E. 490, 76 A. L. R. 1109; Gostina v. Ryland, 116 Wash. 228, 199 P. 298, 18 A. L. R. 650; Cobb v. Western Union Telegraph Co., *supra;* 1 Am. Jur., Adjoining Landowners, § 56, p. 537; 2 C. J. S., Adjoining Landowners, § 38, p. 33.

If the hedge had been by the parties constituted a boundary line between their lands, it would have been their common property, but neither would have had a right to cut, injure, or destroy any part of it by the exercise alone of his desire or judgment. Weisel v. Hobbs, *supra;* Lennon v. Terrall, 260 Mich. 100, 244 N. W. 245; Musch v. Burkhart, 83 Iowa 301, 48 N. W. 1025, 32 Am. S. R. 305, 12 L. R. A. 484; 1 Am. Jur., Adjoining Landowners, § 59, p. 540; 2 C. J. S., Adjoining Landowners, § 40, p. 35. See, also, Schuster v. Schuster, 84 Neb. 98, 120 N. W. 948, 29 L. R. A. N. S. 224, 18 Ann. Cas. 1078.

Appellants admit they were cutting the hedge and claim they were acting within their legal rights thereby to protect their property in it, that they were the owners of at least one-half of it. They had cut about 20 yards of the hedge and more than 20 hedge trees, and were continuing to cut the hedge at the time the suit was filed. Injunction was a proper remedy. Equity will interfere by injunction to prevent destruction of a hedge by a stranger to the inheritance as being such an injury to the realty as cannot be fully compensated in damages

for the trespass. One who has trespassed upon the land of another, and threatens to continue such trespass may be enjoined from so doing. The owner of real estate is not required to permit the devastation of his hedge by a trespasser and seek relief in an action at law for damages. He may resort to an action to prevent such trespasses. Ayres v. Barnett, 93 Neb. 350, 140 N. W. 634; Sapp v. Roberts, 18 Neb. 299, 25 N. W. 96; Weisel v. Hobbs, *supra*; 1 Am. Jur., Adjoining Landowners, § 59, p. 540.

We make the same findings as did the trial court, and affirm its decree.

AFFIRMED.